**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE REQUEST OF SUSAN DEVINE FOR
JUDICIAL ASSISTANCE PURSUANT TO 28
U.S.C. § 1782 FOR THE LIECHTENSTEIN
PRINCELY COURT

Case No. 1:22-mc-00133

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* REQUEST OF SUSAN
DEVINE FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 FOR THE
<u>LIECHTENSTEIN PRINCELY COURT</u>**

Petitioner Susan Elaine Devine ("Ms. Devine"), by and through her undersigned counsel,

respectfully files this *ex parte* application seeking the issuance of a subpoena on Spears & Imes

LLP, a law firm located in this judicial district, which is in possession of certain documents that

have been requested by the Liechtenstein Princely Court ("Liechtenstein Court").  The

Liechtenstein Court has requested those documents to assist in its criminal investigation of Ms.

Devine for alleged money laundering in violation of § 165 of the Liechtenstein Criminal Code.

As set forth below, the statutory factors for granting an application for legal assistance under 28

U.S.C. § 1782 are satisfied, and, despite the Protective Order discussed herein, the discretionary

factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004),

weigh in favor of granting the application.

<u>**BACKGROUND**</u>

***The Parties***

1.     Ms. Devine is a citizen of the United States and Brazil and a resident of Florida.

Her ex-husband is Florian Homm, a former officer of Absolute Capital Management Holdings

Limited ("ACM"), formerly a hedge fund management firm organized under the laws of the

Cayman Islands.

1

2.     Absolute Activist Value Master Fund Limited, Absolute East West Fund Limited, Absolute East West Master Fund Limited, Absolute European Catalyst Fund Limited, Absolute Germany Fund Limited, Absolute India Fund Limited, Absolute Octane Fund Limited, Absolute Octane Master Fund Limited, and Absolute Return Europe Fund Limited (collectively, "the Funds") are nine hedge funds that were incorporated in the Cayman Islands.  The Funds invested in a variety of asset classes on behalf of hundreds of investors in the United States and around the world.

3.     The Funds were represented by, *inter alia*, attorneys David Spears, Linda Imes, and Christopher Dysard of Spears & Imes LLP ("Spears & Imes").  Spears & Imes is located and maintains its principal place of business at 51 Madison Avenue New York, NY 10010.[3]

### *Relevant Background Regarding the 2015 Rico Action*[4]

4.     On June 1, 2015, the Funds filed a lawsuit in the U.S. District Court for the Middle District of Florida against Ms. Devine claiming to be victims of a securities fraud and "penny stock scheme" purportedly carried out from 2004 to 2007 by ACM and a number of ACM's officers and agents, including Ms. Devine's ex-husband, Mr. Homm.  *See Absolute Activist Value Master Fund Limited et al. v. Devine*, No. 2:15-cv-00328-JES-MRM (M.D. Fla.). The case was assigned to Senior U.S. District Judge John Steele.  The Funds' primary claims against Ms. Devine were brought under 18 U.S.C. § 1962(c) and (d), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and under Fla. Stat. §§ 772.103(3) and 895.03(3)

---

[3]  *See* https://spearsimes.com/.

[4]  For clarity, we refer to this litigation as the "2015 RICO Action."  It is captioned: *Absolute Activist Value Master Fund Limited et al. v. Devine*, No. 2:15-cv-00328-JES-MRM (M.D. Fla.).  Docket citations in this section are to the docket for the 2015 RICO Action.  The relevant facts of that litigation are summarized herein.  Certain of the facts set forth herein are taken from the pleadings in the 2015 RICO Action and are judicially noticeable by this Court. *See Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 313 n.7 (S.D.N.Y. 2015) (pleadings in other cases judicially noticeable).

("Florida RICO").[5]  The Funds claimed that Ms. Devine assisted Mr. Homm in transferring and concealing assets that had been acquired as a result of the alleged "penny stock scheme."

5.    On July 30, 2015, Judge Steele entered a Protective Order governing the use of discovery material produced or created in connection in the litigation.  *See* Dkt. 64.

6.    As relevant here, Paragraph 14 of the Protective Order contains a provision stating as follows:

> Notwithstanding any provision of this Protective Order, ***the Parties may disclose Discovery Material marked as Confidential*** if necessary to comply with a subpoena or court order, whether or not originating with the Court in this captioned Protective Order; ***pursuant to any other form of legal process from any court, any international, federal or state regulatory or administrative body, any international, federal or state agency, any legislative body, or any other person or entity; or pursuant to a request for information from any international, federal or state criminal authority***. In the event a Party receives a request for production of Discovery Material marked as Confidential pursuant to (1) subpoena or court order, (2) any form of legal process, or (3) request from any criminal authority seeking disclosure, such Party must provide written notice of such request to the Party that produced such Discovery Material before the Party receiving such request complies with such request.

Dkt. 64 ¶ 14 (emphasis added).

7.    The Funds relied on Paragraph 14 to produce certain confidential documents in response to an informal request for those documents from a Swiss prosecutor who was investigating Ms. Devine's ex-husband, Florian Homm, and others, for suspected money laundering.  Ms. Devine was not a defendant but rather a third-party in that proceeding.[6]

---

[5]  The Funds' RICO claim and Florida RICO claims were dismissed by the Court in response to Ms. Devine's motion to dismiss the amended complaint.  *See* Dkt. 521.  The Funds thereafter proceeded solely on a state law unjust enrichment claim.

[6]  On March 28, 2022, the Federal Criminal Court of Switzerland issued a 332-page decision in connection with its investigation.  In that decision, the Swiss Court found that the Funds were not victims of the alleged penny stock scheme.  *See* Decl. of Matthew D. Lee Supp. *Ex Parte* Request Of Susan Devine ("Lee Decl.") ¶ 17.

8.      The Protective Order also contains a provision stating that "[a]t the conclusion of this litigation (***including any appeals***) all material designated Confidential pursuant to the terms of this Protective Order shall either be destroyed or returned to the designating Party, within sixty (60) days after the conclusion of the litigation."  Dkt. 64 ¶ 18 (emphasis added).

9.      After suffering a series of reversals in the 2015 RICO Action, the Funds filed a notice of voluntary dismissal on February 14, 2018.  *See* Dkt. 680.  On February 21, 2018, the Court issued an order dismissing the 2015 RICO Action without prejudice.  Dkt. 682.

10.      At the time that the Funds filed their notice of voluntary dismissal on February 14, 2018, an interlocutory appeal that the Funds had filed in connection with the 2015 RICO Action was pending before the U.S. Court of Appeals for the Eleventh Circuit.  The Funds' interlocutory appeal was dismissed on February 20, 2018.  *See* Dkt. 681.  Within 60 days of the dismissal of the Funds' interlocutory appeal, on April 20, 2018, Ms. Devine filed a motion for partial final judgment and a motion to modify the protective order.  *See* Dkt. 685; Dkt. 686.  Thus, the "return-or-destroy" deadline set forth in the Protective Order never lapsed, since the deadline began to run upon the conclusion of "litigation (*including any appeals*)."  Dkt. 64 ¶ 18 (emphasis added).

11.      Since the Funds filed their notice of voluntary dismissal on February 14, 2018, the parties have been engaged in continuous litigation (before the district court, the Eleventh Circuit, and the Supreme Court of the United States) concerning, *inter alia*, the scope and application of the Protective Order.  That litigation has included briefing relating to Ms. Devine's motion to modify the Protective Order, in which Ms. Devine requested, *inter alia*, that the Protective Order be modified to permit her to retain and disclose certain documents that the Funds designated confidential in the 2015 RICO Action.  *See* Dkt. 686.

4

12.     As relevant here, on January 10, 2020, Judge Steele issued an Order denying Ms. Devine's motion to modify the Protective Order.  *See* Dkt. 794.  Judge Steele further directed, contrary to the deadline set forth in the Protective Order, that Ms. Devine "comply with the terms of the Protective Order within fourteen (14)"—rather than sixty—days.  *Id.*  Ms. Devine appealed Judge Steele's order to the Eleventh Circuit on January 17, 2020.  *See* Dkt. 795.  Ms. Devine also sought a stay of Judge Steele's January 10, 2020 Order pending her appeal.  *See* Dkt. 796.

13.     On January 22, 2020, Judge Steele denied Ms. Devine's request for a stay but held that the Funds "will not suffer substantial harm by having the documents [at issue] maintained under seal by the Clerk of the Court."  Judge Steele ordered Ms. Devine to deposit her copy of the Funds' confidential documents under seal with the clerk of court for the U.S. District Court for the Middle District of Florida.  *See* Dkt. 799.  Ms. Devine complied with Judge Steele's order.  She deposited her copy of the confidential documents with the clerk on January 24, 2020.

14.     On May 28, 2021, the Eleventh Circuit issued a decision relating to Ms. Devine's appeal of Judge Steele's denial of her motion to modify the Protective Order.  *See supra* ¶ 12; *Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258 (11th Cir. 2021).  The Eleventh Circuit held that the district court did not have jurisdiction to modify the Protective Order.

15.     Following the Eleventh Circuit's issuance of its mandate, Judge Steele entered an order on September 14, 2021 (the "Transfer Order") in which he directed that Ms. Devine's copy of the confidential documents, which were being held under seal by the clerk of court, be "return[ed] . . . to <u>counsel for **plaintiffs**</u> [i.e. Spears & Imes] for destruction or return pursuant to

paragraph 18 of the" Protective Order.  Dkt. 812 (emphasis in original).  The clerk's office

mailed the relevant documents to Spears & Imes on September 16, 2021.  *See* Dkt. 814.

      16.     Ms. Devine appealed the Transfer Order to the Eleventh Circuit, and that appeal is

presently pending.[7]

      17.     On September 28, 2021, at Ms. Devine's request, Judge Steele entered an order

staying the Transfer Order "pending further Order" of the Court.  *See* Dkt. 816.

      18.     On February 21, 2022, Ms. Devine's counsel notified Judge Steele of their receipt

of a letter received from Princely Judge Tatjana Nigg of the Liechtenstein Court.  *See* Dkt. 820.

The letter from Judge Nigg, which was directed both to Ms. Devine's counsel and to Judge

Steele, requested that certain documents designated confidential by the Funds be produced to

Judge Nigg for use in the foreign criminal proceedings.  *See* Decl. of Matthew D. Lee Supp. *Ex*

*Parte* Request of Susan Devine ("Lee Decl.") ¶¶ 7, 11.  Further details regarding those

Liechtenstein criminal proceedings are set forth *infra* at ¶¶ 22-32.

      19.     On March 21, 2022, Ms. Devine filed a motion to enforce the Protective Order in

which she sought the Court's assistance in her effort to comply with Liechtenstein's request for

the production of the confidential documents at issue.  Dkt. 822.  Judge Steele denied Ms.

Devine's motion on April 14, 2022.  Dkt. 842.  Ms. Devine appealed Judge Steele's order to the

Eleventh Circuit, and that appeal is presently pending.[8]

      20.     On May 2, 2022, Judge Steele denied Ms. Devine's previously-filed motion to

extend the stay of the Transfer Order, and ordered that the stay will be lifted at 6:00pm on May

---

[7] *See Absolute Activist Value Master Funds Limited, et al. v. Devine*, No. 21-13587 (11th Cir., opened Oct. 15, 2021).

[8] *See Absolute Activist Value Master Funds Limited, et al. v. Devine*, No. 22-11313 (11th Cir., opened April 22, 2022).

16, 2022, unless otherwise ordered by the Eleventh Circuit Court of Appeals.  *Absolute Activist Value Master Fund Limited et al. v. Devine*, No. 2:15-cv-00328-JES-MRM (M.D. Fla.) (Dkt. 846).  Ms. Devine has appealed this Order to the Eleventh Circuit.[9]  If the stay is lifted, the Funds and their counsel will be permitted to destroy the confidential documents requested by Judge Nigg, which are the only set of documents in the control of any U.S.-based entity.  In addition to her recently-filed appeals to the Eleventh Circuit, Ms. Devine has filed a motion asking the Eleventh Circuit to issue a stay prohibiting the destruction of documents requested by Judge Nigg pending the outcome of Ms. Devine's appeals.  *See* Time-Sensitive Mot. to Stay Pending Appeal, *Absolute Activist Value Master Funds Limited, et al. v. Devine*, No. 21-13587 (11th Cir., filed May 10, 2022).

21.    As of the date of this filing, the Transfer Order remains stayed.  Thus, the documents requested by Liechtenstein remain with the Funds' counsel, Spears & Imes, and have not been destroyed.  *See* Lee Decl. ¶¶ 12-14.

### *Relevant Background Regarding the Liechtenstein Criminal Proceedings*

22.    On or about December 3, 2015, authorities in Liechtenstein commenced "criminal proceedings . . . against Ms. Susan Devine on suspicion of money laundering according to § 165 of the Liechtenstein criminal code."  *Id.* ¶ 3.

23.    The Liechtenstein criminal proceedings were initiated based on a suspicion report of Neue Bank AG (NB), Vaduz, in November 2015.  Ms. Devine is a client of NB and has gold coins stored in a safe deposit box at NB.  The investigation relates to allegations that the gold coins were purchased using funds derived from the fraudulent actions of Ms. Devine's ex-husband, Florian Homm.  *Id.* ¶ 4.

---

[9] *See Absolute Activist Value Master Funds Limited, et al. v. Devine*, No. 22-11590 (11th Cir., opened May 9, 2022).

24.     The Liechtenstein criminal proceedings are largely based on information obtained from Switzerland in connection with the Swiss criminal investigation into Ms. Devine's ex-husband, Florian Homm, and others, related to suspected money laundering.  *Id.* ¶ 5.

25.     On January 31, 2017, the United States Office of International Affairs received a request for legal assistance from the Liechtenstein Court pursuant to a Mutual Legal Assistance Treaty ("MLAT").  The request related to Liechtenstein's criminal investigation of Ms. Devine relating to suspected money laundering.  *Id.* ¶ 6.

26.     By letter dated February 10, 2022, Judge Nigg of the Liechtenstein Court sent a letter addressed to Judge Steele to Ms. Devine's Liechtenstein counsel, Vera Hasler; and to one of Ms. Devine's United States counsel, requesting the production of certain documents that are presently in the possession of the Funds' counsel.  *Id.* ¶ 7.

27.     Because Judge Nigg's February 10, 2022 letter is drafted in German, Ms. Devine's counsel obtained a certified translation of the letter.  *Id.* ¶ 8.

28.     On April 1, 2022, Ms. Devine's Liechtenstein counsel, Ms. Hasler, obtained a certified copy of the February 10, 2022 letter from Judge Nigg.  Decl. of Vera Hasler Supp. *Ex Parte* Request of Susan Devine ("Hasler Decl.") ¶ 6.

29.     The certified copy of the February 10, 2022, letter is identical in all respects to the non-certified copy of the February 10, 2022, letter that Ms. Devine had professionally translated. *Id.* ¶ 7.

30.     Specifically, the February 10, 2022, letter from Judge Nigg requests production of the following:

> [T]hose documents declared as confidential to the US District Court of the Middle District of Florida, Fort Myers Division for the proceedings numbered 2:15-cv-328-FtM-29MRM and relating to the interrogation records of Glenn Kennedy, Ronald Tompkins and Darius Parsi, all

> enclosures to this interrogation, as well as documents for the information
> of the ACMH/Absolute Funds from the divorce of Susan Elaine Devine
> and her obtaining of assets in connection with the divorce, in particular
> relating to the ACMH shares and ACMH dividends.

Lee Decl. ¶ 11.

31.     Through the discovery process in the 2015 RICO Action, Ms. Devine came into possession of the confidential documents now being requested by Judge Nigg of the Liechtenstein Court.

32.     As discussed above, Ms. Devine's copies of those confidential documents are presently being held by Spears & Imes pursuant to the Transfer Order entered by Judge Steele on September 14, 2021 (Dkt. 812).  *See supra* ¶¶ 15, 21.

## LEGAL FRAMEWORK

An application pursuant to 28 U.S.C. § 1782 requires both that the district court be statutorily authorized to grant the request, and, if so, that additional discretionary factors counsel in favor of doing so.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

The Second Circuit has distilled § 1782 to include three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person."  *Brandi-Dohrn*, 673 F.3d at 80.  If those requirements are met, courts have discretion to authorize the requested discovery.  *Id.* ("Once the statutory requirements are met, a district court is free to grant discovery in its discretion[.]").

The Court's discretion is guided by certain "discretionary" factors identified in *Intel*, including:

(1) Whether the party from whom discovery is sought is a participant in the foreign proceeding;

(2) The nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of relevant foreign authorities to U.S. federal court assistance;

(3) Whether the requests conceal an attempt to circumvent foreign proof-gathering practices; and

(4) Whether the requests are unduly intrusive or burdensome.

*Intel*, 542 U.S. at 264-65.

Although a court is entitled to exercise its discretion, there are "limitations" on that discretion. *Brandi-Dohrn*, 673 F.3d at 81. A district court must exercise its "discretion under § 1782 in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Id.* (citing *In re Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997)).

## ARGUMENT

### I.  The statutory requirements are satisfied.

All three of the statutory requirements are satisfied here. First, the "person" from whom the discovery is sought resides in or is found in this District. *Brandi-Dohrn*, 673 F.3d at 80. Spears & Imes LLP maintains its principal place of business in the City of New York, located at 51 Madison Avenue New York, NY 10010. That is the same address to which Ms. Devine believes and asserts that the confidential documents were mailed by the clerk of court on September 16, 2021, pursuant to the Transfer Order. *See Absolute Activist Value Master Fund Limited et al v. Devine*, No. 2:15-cv-00328-JES-MRM (M.D. Fla.) (Dkt. 814).

Second, there can be no doubt that the discovery is for use in a foreign proceeding before a foreign tribunal. *Brandi-Dohrn*, 673 F.3d at 80. The request for the discovery was made by an

international criminal authority—the Liechtenstein Princely Court—in connection with a foreign criminal investigation of Ms. Devine for alleged money laundering in violation of Liechtenstein law. *See supra* ¶¶ 22-32.

Finally, the application is made by an "interested person." *Brandi-Dohrn*, 673 F.3d at 80. The Supreme Court of the United States has stated in no uncertain terms that "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782[.]" *Intel Corp.*, 542 U.S. at 256; *see also In re Application of Shervin Pishevar for an Ord. to take Discovery for use in Foreign Proc. Pursuant to 28 U.S.C. § 1782*, 439 F. Supp. 3d 290, 303 (S.D.N.Y. 2020) (same) (subsequent history omitted). Ms. Devine is a "litigant" in the foreign proceedings. Those proceedings were launched against Ms. Devine in December 2015, and the ongoing investigation relates to Liechtenstein's suspicion that Ms. Devine engaged in money laundering in violation of § 165 of the Liechtenstein Criminal Code. *See supra* ¶ 22.

Section 1782 was amended in 1996 to add the phrase "'including criminal investigations conducted before formal accusation,' thus expanding access to discovery under § 1782 in criminal matters." *Republic of Nigeria v. VR Advisory Services, LTD,* 27 F.4th 136, 147 (2d Cir. 2022). Moreover, Ms. Devine is an "interested person," regardless of whether a formal accusation has been made against her in Liechtenstein. *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017) ("Section 1782 explicitly permits district courts to grant discovery in aid of 'criminal investigations conducted before formal accusation[.]'").

Because all three of the statutory requirements are satisfied, the Court has the authority to grant Ms. Devine's application.

II.     **The discretionary factors weigh in favor granting the application where Ms. Devine is seeking to enforce the Protective Order.**

The Court not only has the authority to grant the application, it should exercise its discretion to do so because the four discretionary factors set forth in *Intel* weigh in favor of authorizing legal assistance to Liechtenstein under 28 U.S.C. § 1782.

First, neither Spears & Imes nor the Funds are parties to the Liechtenstein proceedings. *See Intel*, 542 U.S. at 264.  Because they are not parties, the need for § 1782 assistance is apparent, as the Liechtenstein Court is not able to obtain the documents directly from Spears & Imes or the Funds.  *Cf. id.* ("[W]hen the person from whom discovery is sought is a participant in the foreign proceeding (as Intel is here), the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."); *see also Matter of Makhpal Karibzhanova for Jud. Assistance Pursuant to 28 U.S.C. § 1782*, No. 21 MISC. 442 (KPF), 2021 WL 2435453, at *3 (S.D.N.Y. June 15, 2021) ("Because the respondent entities from which Applicant anticipates seeking records are unlikely to be subject to the disclosure power of the Kazakh courts, 'their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.'") (citing *Intel*, 542 U.S. at 264).

Second, in deciding whether to grant a § 1782 application, the Court may "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."  *Intel*, 542 U.S. at 264.  All of those factors weigh in favor of granting the request here.  There is an active criminal investigation against Ms. Devine in Liechtenstein that has been ongoing since at least December 2015, *see supra* ¶¶ 22-32, and the Liechtenstein Court has specifically requested, via a letter addressed to Ms. Devine's counsel and to a U.S. District Court, that the documents held by Spears & Imes be produced for use in that foreign criminal

12

investigation.  Thus, Liechtenstein is not only receptive to the request, it has specifically ***made the request*** for the information.  Moreover, the serious nature of the proceedings, which could lead to formal criminal charges against Ms. Devine in Liechtenstein, further militate in favor of granting the application.

Third, the application does not seek "to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 264.  To the contrary, the application seeks to ***assist*** in foreign-proof gathering.  As noted above, the Liechtenstein Court has directly requested the documents at issue, and it cannot obtain those documents through other means.  Assistance from this Court under § 1782 is necessary because the Funds and their counsel, Spears & Imes, are outside of the jurisdictional reach of the Liechtenstein Court.

Finally, the request is not "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 264.  The document request from Liechtenstein is narrow and specific.  Indeed, the documents requested by Liechtenstein are the same documents that the clerk of court mailed to Spears & Imes on September 16, 2021, and they are the same documents that Spears & Imes is presently holding pursuant to the Transfer Order entered by Judge Steele.  Thus, the documents are already gathered and in the possession of the Funds' counsel.  Moreover, the documents themselves are not protected by any privilege, such as the attorney-client privilege or the work product doctrine.  *Compare Kiobel by her Attorney-in-fact Samkalden v. Cravath, Swaine & Moore,* 895 F.3d 238, 244 (2d Cir. 2018) (privileged documents sought).

The Protective Order issued in the 2015 RICO Action does not stand in the way of any production to Liechtenstein.  In fact, the Protective Order permits disclosure of those confidential documents in this situation.  Specifically, Paragraph 14 of the Protective Order provides that:

> Notwithstanding any provision of this Protective Order, the Parties may disclose Discovery Material marked as Confidential if necessary to comply with a subpoena or court order, whether or not originating with the Court in this captioned Protective Order; ***pursuant to any other form of legal process from any court,*** any international, federal or state regulatory or administrative body, any international, federal or state agency, any legislative body, or any other person or entity; ***or pursuant to a request for information from any international, federal or state criminal authority***.

*Supra* ¶ 6 (citing Dkt. 64 in the 2015 RICO Action) (emphasis added).  The request from the Liechtenstein Court is a "form of legal process" that was directed to Ms. Devine's counsel and to a U.S. District Court, requesting production of the documents being held by Spears & Imes. Even if the letter from the Liechtenstein Court did not qualify as "legal process" within the meaning of the Protective Order (which, it does), it would clearly constitute a "request for information from [an] international . . . criminal authority" under the Protective Order.  Either way, the disclosure of confidential documents to Liechtenstein is permitted under the Protective Order.[10]

Moreover, producing the documents to Liechtenstein would not place the confidential nature of the documents in jeopardy.  The Liechtenstein Court would maintain the confidentiality of those documents according to the Liechtenstein criminal proceedings law, and those documents would not be available publicly.  *See* Hasler Decl. ¶ 8.

## III.    The Middle District Order denying Ms. Devine's Motion to Enforce the Protective Order with respect to the documents requested by Judge Nigg is no bar to the relief sought herein.

As noted above, Ms. Devine previously moved the U.S. District Court for the Middle District of Florida to enforce the Protective Order by directing the Funds to produce—to Ms.

---

[10]  Indeed, and as noted above, the Funds themselves relied on paragraph 14 of the Protective Order when they produced confidential discovery material they had obtained from Ms. Devine during the 2015 RICO Action to a Swiss prosecutor in response to an informal demand for those materials.  *See supra* ¶ 7.  Judge Steele concluded in a relevant ruling that "the plain language of the Protective Order [] allows for the production of materials to an international criminal authority."  *See* 2015 RICO Action (Dkt. 535) at 11.

Devine, her counsel, or to the District Court itself—the Funds' copies of the materials requested

by Judge Nigg so that those materials thereafter could be forwarded to the Liechtenstein Court at

Ms. Devine's expense.  *See* Dkt. 822 (the "Motion to Enforce").  While Judge Steele denied the

Motion to Enforce on grounds that no formal order of the Liechtenstein Court had been issued,

Ms. Devine has appealed that ruling, Dkt. 843, and respectfully submits that she is likely to

prevail on her appeal.[11]

In any event, the order denying the Motion to Enforce does not preclude the relief Ms.

Devine seeks by way of the instant application under 28 U.S.C. § 1782.  First, the request is

---

[11] In the Order denying the Motion to Enforce, Judge Steele concluded that Ms. Devine's reliance on the protective order was "misplaced" because "no subpoena or court order" seeking production of the relevant documents existed. Dkt. 842 at 4-5. Ms. Devine respectfully submits that this conclusion was erroneous, as the relevant paragraph in the Protective Order expressly permits production of material designated confidential by an opposing party in response to either "legal process" or "a request for information from any international, federal or state criminal authority." Dkt. 64 at ¶ 14.  Ms. Devine submits that the request that Judge Nigg directed to Judge Steele and to Ms. Devine's counsel falls within the scope of at least one and likely both of these categories. Accordingly, Ms. Devine respectfully submits that the Order denying the Motion to Enforce was clearly erroneous and is likely to be reversed on appeal.

Moreover, had Ms. Devine retained possession of the confidential documents requested by Judge Nigg—which documents were produced or created in connection with discovery in the 2015 RICO Action and were designated confidential by the Funds pursuant to the Protective Order—then Ms. Devine could have produced those documents directly to the Liechtenstein Court in response to Judge Nigg's request.  However, Ms. Devine could not do so because, pursuant to various orders issued by Judge Steele in the 2015 RICO Action, Ms. Devine returned her copies of those documents to the Clerk of Court for the Middle District.  *See* Dkt. 799.  While Judge Steele concluded that he had "no authority," under the Protective Order, to require the Funds to produce the confidential discovery material that Judge Nigg requested (and which had been mailed to Spears & Imes by the Clerk of Court), Dkt. 842 at 5, Ms. Devine respectfully submits that this conclusion was in error. The doctrine of constructive trust empowered the Middle District to order the Funds to return to Judge Steele the documents that the clerk of court mailed to Spears & Imes.  *See In re Kennedy & Cohen, Inc.*, 612 F.2d 963, 965 (5th Cir. 1980) (per curiam) (under Florida law, constructive trust is a tool of equity to prevent unjust enrichment and to effectuate justice).  *See also In re Gen. Coffee Corp.*, 828 F.2d 699, 706 (11th Cir. 1987) (beneficiary of a constructive trust "possesses an equitable ownership interest in the trust property, while the trustee possesses legal title to the property.").  Thus the "remedial device" of a constructive trust serves "the dual objectives of *restoring property to its rightful owner* and preventing unjust enrichment."  *Saporta v. Saporta*, 766 So. 2d 379, 382 (Fla. Dist. Ct. App. 2000) (emphasis added).

The Middle District also possessed the authority to order the Funds to return to Judge Steele the documents requested by the Liechtenstein Court because the Funds were acting as bailees with respect to those documents.  *See Meeks ex rel. Estate of Meeks v. Fla. Power & Light Co.*, 816 So. 2d 1125, 1129 (Fla. Dist. Ct. App. 2002) (defining bailment under Florida law); *see also Surety Bank v. Dunbar Armored, Inc.*, No. 14-81368-CIV, 2015 WL 845590, at *6 (S.D. Fla. Feb. 25, 2015) ("Because the transfer of the property is temporary, a bailment generally contemplates a redelivery of the property by the bailee to the owner or some other person entitled to receive it after the trusts of the bailment have been discharged.").

distinguishable from that in *Kiobel*, 895 F.3d at 246-57, because the documents at issue would be

discoverable in a Liechtenstein proceeding by way of a Mutual Legal Assistance Request.

Second, the Hasler Declaration makes clear that the documents will continue to be protected.

*See* Hasler Decl. ¶ 8.  Third, the documents sought are not privileged but rather were designated

as confidential during witness deposition testimony.  Fourth, this case with respect to the

deposition testimony sought does not raise the concerns expressed by the Second Circuit in

*Kiobel* that documents would have to be stored offshore since this case involves litigation

initiated by the Funds rather than documents produced onshore as part of a defense.  Fifth, the

documents should be considered in Ms. Devine's constructive possession because they were

forwarded first to a clerk of court and then to a law firm.  Sixth, Ms. Devine's request is not

broadly drafted, but rather is narrowly tailored to a specific set of documents that is already

gathered and in the possession of the Funds' counsel.  *Cf. In re Aluminum Warehousing Antitrust*

*Litig.*, No. 13-MD-2481 (PAE), 2020 WL 505042, at *3-*4 (S.D.N.Y. Jan. 31, 2020) (denying a

blanket request for documents produced in an MDL that were subject to a protective order but

doing so "without prejudice to Kodak's right to make a tailored application or applications under

§ 1782 . . . for discovery from specified defendants who reside or are found in the district of

filing" and noting that "[a] tightly tailored request for specific discovery pursuant to § 1782 has

clear potential to be granted, so as to permit discovery of discrete materials for use in Kodak's

U.K. action").  Seventh, in the Order denying the Motion to Enforce, Judge Steele noted that he

"previously found that 'on its face, 28 U.S.C. § 1782 does not apply to [the Funds] as [the Funds]

do not reside, nor are they found, in this district.'"  Dkt. 842 (quoting Dkt. 535).  The subpoena

sought by way of the instant application, by contrast, seeks production of the documents

currently in the custody of ***Spears & Imes***.  Spears & Imes, unlike its Cayman Islands-based

clients, is within this District, and Spear & Imes confirmed via email that it possesses the physical documents sought by way of this application. *See* Lee Decl. ¶ 14 (referencing October 12, 2021 email from David Spears stating, with respect to the confidential documents at issue, that "[w]e have them."). Finally, the subpoena is drafted such that Ms. Devine would neither review nor copy any of the documents but instead would forward them to the Liechtenstein Princely Court.

In sum, not only does the Court have the authority to grant the instant application, it should do so because the discretionary factors set forth in *Intel* counsel in favor of providing Liechtenstein with legal assistance under 28 U.S.C. § 1782.

## CONCLUSION

For the foregoing reasons, Ms. Devine respectfully requests that the Court grant this application under 28 U.S.C. § 1782 permitting her leave to serve the enclosed subpoena on Spears & Imes in assistance of the request for documents from the Liechtenstein Princely Court.

Dated:  May 11, 2022                                      Respectfully submitted,

SCHOEPPL LAW, P.A.                                  FOX ROTHSCHILD LLP

By:  /s/ Carl F. Schoeppl                               By:  /s/ Matthew D. Lee
       Carl F. Schoeppl                                        Matthew D. Lee
4651 North Federal Highway                       2000 Market Street, 20th Floor
Boca Raton, FL  33431-5133                       Philadelphia, PA  19103
Phone: (561) 394-8301                               Phone: (215) 299-2765
Fax: (561) 394-3121                                   Fax: (215) 299-2150
carl@schoepplaw.com                                mlee@foxrothschild.com

                                                              *Attorneys for Petitioner Susan E. Devine*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 11th day of May, 2022, I caused a true and correct copy of the

foregoing document to be filed with the Court using the CM/ECF document filing system.

<u>/s/ Carl F. Schoeppl</u>
Carl F. Schoeppl